## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

| | |
|---|---|
| Dr. PHILIPPE BOIS<br>3437 Elizabeth Street<br>Jupiter, FL  33458<br><br>     Plaintiff,<br><br>     v.<br><br>UNITED STATES DEPARTMENT OF HEALTH<br>AND HUMAN SERVICES<br>200 Independence Avenue, S.W.<br>Washington, D.C. 20201<br><br>KATHLEEN SEBELIUS<br>Secretary of Health and Human Services<br>U.S. Department of Health and Human Services<br>200 Independence Avenue, S.W.<br>Washington, D.C. 20201<br><br>HOWARD K. KOH<br>Assistant Secretary of Health<br>U.S. Department of Health and Human Services<br>Hubert H. Humphrey Building, Room 336-E<br>200 Independence Avenue, S.W.<br>Washington, D.C 20201<br><br>NANCY GUNDERSON<br>Deputy Assistant Secretary<br>Office of Grants and Acquisition Policy and<br>Accountability<br>U.S. Department of Health and Human Services<br>Hubert H. Humphrey Building, Room 336-E<br>200 Independence Avenue, S.W.<br>Washington, D.C 20201<br><br>     and<br><br>DONALD WRIGHT,<br>Acting Director, Office of Research Integrity<br>U.S. Department of Health and Human Services<br>1101 Wooton Parkway, Suite 700<br>Rockville, MD 20852 | Civil Action No. _____<br><br><br>**COMPLAINT** |

| | )
|Defendants. | )
| | )

───────────────────────────────────────────────

## <u>INTRODUCTION</u>

The Office of Research Integrity ("ORI"), an office within the United States Department of Health and Human Services ("HHS"), accused Plaintiff Philippe Bois, Ph.D., of research misconduct and proposed that he be barred from involvement in any federally funded research activities for a period of three years.  Dr. Bois denies that he committed research misconduct and, pursuant to 42 C.F.R. § 93.501, he exercised his right to contest the proposed sanction by requesting an in-person hearing before an Administrative Law Judge ("ALJ").  However, without hearing any evidence, the ALJ, in a Recommended Decision dated May 3, 2011 (the "Recommended Decision"), urged the HHS Assistant Secretary of Health to deny Dr. Bois's Hearing Request.  Less than two weeks later, however, on May 16, 2011, the ALJ mysteriously – and for reasons that have never been explained – issued an Amended Decision that, instead of merely recommending a course of action by HHS, purported to constitute HHS's final ruling denying Dr. Bois's Hearing Request.  In so doing, the Amended Decision, among other things, overlooked issues of material fact that entitled Dr. Bois to a hearing, thereby violating HHS's regulations and depriving Dr. Bois of his opportunity to defend himself against ORI's accusations and proposed sanctions before an impartial fact-finder.   In addition, the ALJ's decision to "transform" the initial "recommended" decision into a "final" decision –  without any input from ORI, much less from Dr. Bois –  was questionable and a stark departure from HHS regulations.  At the very least, this highly irregular "transformation" suggests the possibility of improper, *ex parte* communications between the ALJ and ORI, which prejudiced Dr. Bois.

Nonetheless, Dr. Bois protested the ALJ's Amended Decision and sought a further administrative review.  But HHS ignored its own regulations, declined to allow Dr. Bois any further appeal, and issued a final decision dated May 26, 2011 (the "Debarment Order") which adopted the Amended Decision and confirmed ORI's proposed sanctions.  HHS's actions, including the Amended Decision and the Debarment Order, were taken in violation of the Administrative Procedure Act, 5 U.S.C. §§ 551-706 (the "APA"), the applicable rules of the defendant HHS, and the United States Constitution, including the Fifth Amendment.

As a result of the Amended Decision and the Debarment Order, Dr. Bois was denied his only opportunity to defend himself against ORI's accusations and proposed findings.  In addition, as a direct consequence of the Debarment Order issued by HHS, Dr. Bois was recently terminated from his employment at a research institute and his reputation as a research scientist has been irreparably damaged.

Accordingly, Dr. Bois seeks an order of this Court rescinding the Debarment Order and directing HHS to grant his request for an in-person hearing before an HHS ALJ pursuant to 42 C.F.R. § 93.501.

## JURISDICTION AND VENUE

1.      Jurisdiction is founded on the existence of federal questions arising under the Fifth Amendment of the Constitution of United States, §§ 551-706 of the APA, and the regulations of HHS in force at the time of the alleged violation resulting in Plaintiff's debarment.

2.      Venue is established in this District pursuant to 28 U.S.C. § 1391(b) and 5 U.S.C. § 703.

## PARTIES

3. Plaintiff, Dr. Philippe Bois, Ph.D., ("Plaintiff" or "Dr. Bois") resides in Jupiter, Florida.

4. Defendant, United States Department of Health and Human Services ("HHS"), is an agency of the United States whose headquarters office is located at 200 Independence Avenue, S.W., Washington, D.C. 20201.

5. Defendant, the Honorable Kathleen Sebelius, is the Secretary of Health and Human Services (the "Secretary").  The Secretary is being sued in her official capacity as the department head of HHS and its components.

6. Howard Koh is the Assistant Secretary for Health. Assistant Secretary Koh is being sued in his official capacity as the HHS official designated to review decisions of HHS Administrative Judges on matters involving the Office of Research Integrity ("ORI").

7. Nancy Gunderson is the HHS Deputy Assistant Secretary for the Office of Grants and Acquisition Policy and Accountability.  Deputy Assistant Secretary Gunderson is being sued in her official capacity as the HHS official designated to impose debarment.

8. Donald Wright is the Acting Director of the ORI.  Acting Director Wright is sued in his official capacity as the acting head of ORI, which is a department within HHS.

## FACTS

### A. Dr. Bois's Background

9. Dr. Bois is a geneticist, with an extensive list of publications, who specializes in identifying the causes of, and possible therapies for, cancers.  Dr. Bois was educated in Paris, where he studied applied genetics and oncogenesis.  He received his Ph.D. from the University of Paris in 1998.  He has had professional appointments in the United Kingdom and the United

States, and in 1999 he became a post-doctoral fellow in the Department of Genetics and Tumor

Cell Biology at the St. Jude Children's Hospital in Memphis, Tennessee ("St. Jude"), where he

conducted research in the laboratory of Dr. Gerard Grosveld.

10.     In August 2004, Dr. Bois left Dr. Grosveld's laboratory and began working in the

laboratory of Dr. John Cleveland in the St. Jude Biochemistry Department.  At Dr. Grosveld's

insistence, Dr. Bois was required to, and did, sign a statement that he had not taken with him any

laboratory notebooks or other proprietary materials that he had generated while working in Dr.

Grosveld's laboratory.  He has not seen any of those materials since leaving Dr. Grosveld's

laboratory.

11.     In 2006, St. Jude began investigating allegations of research misconduct against

Dr. Bois and others.  This investigation was based on allegations made by a graduate student

who was aggrieved against Dr. Bois and other scientists because the graduate student believed he

had been denied first authorship credit on scientific papers.  These allegations set in motion a

multi-stage process for assessing charges of research misconduct and involved both St. Jude and

ORI, the agency charged with overseeing accusations of research misconduct at institutions

supported with funds from the United States Public Health Service ("PHS").

        **B.      Statutory and Regulatory Background**

12.     Pursuant to 42 U.S.C. § 289b, HHS has promulgated regulations governing

institutions and scientists who participate in research supported, in whole or in part, by funds

received from PHS.

13.     The current version of those regulations, which are found at 42 C.F.R. Part 93 (42

C.F.R. §§ 93.25-93.523) (effective May 17, 2005), defines research misconduct as:

"fabrication, falsification, or plagiarism in proposing, performing, or reviewing research, or in reporting research results."  42 CFR § 93.103.

14.     To make a finding of research misconduct, 42 CFR § 93.104 requires that: "(a) there be a *significant* departure from accepted practices of the relevant research community; (b) the misconduct be committed *intentionally, knowingly, or recklessly*; and (c) the allegation be proven by a preponderance of the evidence." (emphasis added)

15.     Mere negligence, honest error, or honest differences of opinion are not research misconduct.  42 C.F.R. § 93.103(d).

## C.     The Institutional Process

16.     In general, institutions receiving PHS support that learn of allegations of research misconduct are required to follow a two-stage process.  The first stage is the institutional inquiry. 42 C.F.R. § 93.307.  A respondent is entitled to notice of the institutional inquiry and must be provided with an opportunity to comment on the inquiry report.  42 C.F.R. § 93.307.  If the institutional inquiry concludes that the allegations of research misconduct have substance, the institution is required to proceed to the second stage and conduct an investigation.  The institution must give notice to ORI of its decision to conduct an investigation.  42 C.F.R. §§ 93.307, 93.309.

17.     During the course of the inquiry and investigation process institutions have broad powers to seize research records and to sequester them even before a respondent is made aware of the commencement of an inquiry.  42 C.F.R. § 93.305.  However, the respondent does not have a right to review the sequestered files.  Id.

18.     The inquiry and investigation processes are not adjudicatory.  Although the investigation committee must give the respondent written notice of the allegations, the respondent's right to participate in the investigation is very limited.  42 C.F.R. §§ 93.310-316.

19.     For example, HHS regulations do not require an institution to allow a respondent to submit evidence or present witnesses to an investigation committee.  In addition, HHS regulations do not give a respondent the right to interview or cross-examine witnesses interviewed by the committee, to be represented by counsel, or even to be present when a witness is being interviewed.  Id.

20.     A respondent's rights after the investigation are likewise limited.  Once the investigation is completed, the institution is not required to give the respondent a copy of the transcript of the committee's interviews, to disclose the identity of the complainant or of any other witnesses, or to provide a copy of the written complaint that initiated the process.  42 C.F.R. §§ 93.310-.93.317.

21.     After the conclusion of the investigation, the investigation committee drafts a report. The respondent only has the right to give comments on the draft report and receive access to the evidence on which the report is based.  42 C.F.R. § 93.312.  HHS regulations do not require the institution to provide the respondent with all of the evidence considered by the committee, including any exculpatory evidence.

22.     Once the investigation committee's report is finalized, it is sent to ORI along with all of the attachments and exhibits.  42 C.F.R. § 93.315.  An institution is not required to give a respondent the right to appeal an adverse finding to a higher authority within the institution.  42 C.F.R. § 93.314.

### D.    St. Jude's Institutional Proceedings

23.     St. Jude commenced an institutional inquiry against Dr. Bois after a graduate student – who was aggrieved at having been denied, in his opinion, first authorship credit on an article – accused Dr. Bois of committing research misconduct when he worked in Dr. Grosveld's laboratory.

24.      In response to the graduate student's allegations, St. Jude appointed Dr. Charles Rock to conduct the institutional inquiry.  Dr. Rock, who later became a key witness against Dr. Bois in the investigation phase, interviewed the graduate student and seized various electronic and paper records relating to Dr. Bois's research.  Dr. Rock submitted an inquiry report which asserted that Dr. Bois had committed six (6) acts of misconduct.  On the strength of Dr. Rock's inquiry report, St. Jude formed an investigation committee.

25.      Dr. Rock was the first of several witnesses before the investigation committee, and he made a presentation.  The investigation committee also interviewed the graduate student, Dr. Bois, Dr. John Cleveland, and others.

26.     Dr. Bois was given limited access to his laboratory notebooks and electronic files generated while he was working in Dr. Grosveld's laboratory.  However, pursuant to the agreement he had signed when he left Dr. Grosveld's laboratory in August 2004, he was not able to make copies of his notebooks or other laboratory materials.

27.      In addition, Dr. Bois was not permitted to communicate with the graduate student, and he was not allowed to be present when the investigation committee conducted its interviews or when Dr. Rock made his presentation to the committee.  Dr. Bois was not told who the investigation committee had interviewed, and he had no opportunity to cross-examine those witnesses or present any of his own witnesses to the investigation committee.  Although Dr. Bois

8

was interviewed by the investigation committee, he was not told, prior to his interview, about the evidence that the investigation committee was considering.

28.     Dr. Bois cooperated fully with the investigation, but, as was his right, he denied that he had committed research misconduct.

29.     Before the investigation was completed, but after the inquiry report had been issued, St. Jude terminated Dr. Bois.

30.      Institutional proceedings are required to be kept confidential.  42 C.F.R. § 93.108.  However, a St. Jude employee breached the confidentiality surrounding the investigation and the allegations of misconduct by providing information about the investigation and the allegations to Dr. Bois's prospective employer.  As a result, when Dr. Bois attempted to secure a position at another institution, an anticipated offer of employment was withdrawn.

### E.     The Misconduct Allegations

31.     During the course of the institutional investigation, it became apparent that errors were made in two articles published by scientists working at St. Jude.  Dr. Bois was one of the several scientists listed as an author of each article.

### 1.     Misconduct Allegation #1: Figure 4B in the 2005 MCB Article

32.     One of the allegations of research misconduct centered on an article published in Molecular and Cell Biology ("MCB"), entitled Bois, Borgon, Vonrhein & Izard, Structural Dynamics of α-Actinin-Vinculin Interactions, *Mol. Cell. Biol.* (2005) 25:6112-6122 (the "MCB Article").  The MCB Article concerned the binding of a protein called vinculin to two other proteins, talin and α-actinin.

33.     During the prepublication review of the article in October 2004, a reviewer
suggested that the authors include supporting data (such as control experiment) to buttress a
minor premise of the MCB Article or to "tone down" some of the statements in the article.

34.     Accordingly, the corresponding author (not Dr. Bois) asked the aforementioned
graduate student to conduct a control experiment.  The graduate student conducted the control
experiment by himself in December 2004.  In doing so, the graduate student was not observed by
any of the MCB Article's other authors.  Dr. Bois was not involved in conducting the control
experiment in any respect and he did not work in the laboratory where the experiment was
conducted.  Upon its completion, the graduate student informed the corresponding author (not
Dr. Bois) that the experiment was successful.

35.     The results of the control experiment conducted by the graduate student were
valid and reproducible, and provided support for the premise stated in the MCB Article.

36.     No one at St. Jude or at ORI has ever contested the validity or reproducibility of
the control experiment performed by the graduate student.

37.     The corresponding author (again, not Dr. Bois) decided to include an image
depicting the graduate student's control experiment in the final draft of the MCB Article.  The
image was not required by the MCB, and the MCB Article would have been published regardless
of whether or not it included the image.

38.     On February 11, 2005, the corresponding author, in whose laboratory the
experiment had been conducted, asked Dr. Bois to help the graduate student create an image
depicting the control experiment suitable for inclusion in the MCB Article.  Dr. Bois had not
been involved in the control experiment and had no knowledge of how the image should be

labeled.  That information was solely in the possession of the graduate student who never shared it with Dr. Bois.

39.     Although Dr. Bois was involved in other aspects of the MCB Article, he had no involvement in the control experiment conducted by the graduate student.  He did not supervise the graduate student for this particular experiment and worked in another laboratory.

40.     To create the image, the graduate student provided Dr. Bois with modified images of his experiment results.  Relying solely on the graduate student, Dr. Bois took the images provided by the graduate student and, over the course of a few hours in the late morning and early afternoon of February 11, 2005 and with the graduate student often at his side, Dr. Bois added labels describing different portions of the images to make the image suitable for inclusion in the MCB Article.

41.     At some point the image was labeled incorrectly, though it was still scientifically correct and reproducible.  It was undisputed that, on that day, the graduate student provided Dr. Bois with an image or images that the graduate student had labeled incorrectly and that he failed to alert Dr. Bois of those labeling errors.

42.     Although the graduate student subsequently testified that he knew the image had been labeled incorrectly, he never told Dr. Bois or any other author of the error prior to final publication of the MCB Article.  Because the figure remained scientifically correct and reproducible, it was virtually impossible for anyone other than the graduate student to know that it was labeled incorrectly.

43.     The graduate student never showed his laboratory notebooks to Dr. Bois.

44.     A revised draft of the MCB Article, including the erroneously labeled (but scientifically correct) image of the graduate student's control experiment, which was now called Figure 4B, was submitted to the MCB later in the day on February 11, 2005.

45.     Thereafter, the MCB sent the final version of the MCB Article to the corresponding author for final review and approval.  The corresponding author sent the final version of the MCB Article to all of the authors, including the graduate student, for final review. The graduate student knew that Figure 4B was labeled incorrectly, but he failed to advise the corresponding author, or Dr. Bois, of the error.  Dr. Bois had no knowledge that Figure 4B had been labeled incorrectly since it reflected the graduate student's conclusions and was scientifically correct.  He and the other authors relied on the graduate student to ensure that Figure 4B accurately depicted the control experiment that the graduate student had conducted.

46.     Dr. Bois did not commit research misconduct in connection with the MCB Article because he did not know, at the time the MCB Article was published, that it contained a labeling error since it correctly depicted the outcome of the experiment as described by the graduate student.  Moreover, he and the corresponding author reasonably relied on the graduate student to ensure that Figure 4B was correct.

47.     The error in the labeling of Figure 4B was not brought to Dr. Bois's attention until after the graduate student approached St. Jude and complained that Dr. Bois had altered Figure 4B.

48.     After the error in Figure 4B was brought to the attention of Dr. Bois and the corresponding author, the corresponding author sent a letter to the MCB identifying the error and stating that "this error does not affect the results or conclusions of the article."

49.    In response, the MCB's editors printed the corrections noted by the corresponding author.   The MCB did not print the corrected Figure 4B.

50.    St. Jude advised ORI that the error in labeling Figure 4B was "inconsequential."

51.    St. Jude did not seek to impose any discipline on anyone other than Dr. Bois for the error in the labeling of Figure 4B in the MCB Article.

52.    Dr. John Cleveland, who knew Dr. Bois and was familiar with the circumstances of the experiment that led to the publication of the MCB Article, was interviewed by the St. Jude investigation committee on June 19, 2006.  When he was asked by the St. Jude investigation committee why he thought the allegations of misconduct had been made by the graduate student, Dr. Cleveland stated that:

> My gut feeling is it has to do with problems with the authorship so I think in some respects this could have been retaliatory for [the graduate student] not being first author on the MCB paper….

53.    Dr. Cleveland also told the St. Jude committee that the graduate student was "technically challenged" and  "sloppy."

## 2.    Misconduct Allegation #2: The JCB Article

54.    A second issue addressed by the St. Jude investigation committee concerned an article entitled Bois, Izeradjene, P. Houghton, Cleveland, J. Houghton, and Grosveld, FOXO1a acts as a selective tumor suppressor in alveolar rhabdomyosarcoma, *Jour. Cell. Biol*. 170:903-912 (2005) (the "JCB Article").

55.    In the fall of 2002, Dr. Bois was working under the mentorship of Dr. Grosveld and they were investigating whether a protein (known as FOXO1) was present in certain soft tissue cancers that arise in children (known as alveolar rhabdomyosarcoma or ARMS).

56.     Using cell lines (cancer cells grown in culture) that St. Jude makes available to the international research community and that were considered very reliable, Dr. Bois and others conducted experiments tending to show that FOXO1 was either low or absent in ARMS and that enforced expression of FOXO1 would stop tumor growth.  These findings strongly suggested that the FOXO1 protein might suppress ARMS, a deadly childhood cancer.

57.     Accordingly, Dr. Bois conducted an experiment in February 2003 using actual human cancer tissue instead of cell lines.  The results conclusively showed that 25-30% of primary tumors had no expression of FOXO1.  This meant that 100% of the St. Jude cell lines represented a significant ARMS subtype where reintroduction of FOXO1 would be a very effective suppressant of the ARMS subtype.  However, due to the press of other business, further work on this specific line of inquiry was postponed.

58.     In December 2003/January 2004, Dr. Bois conducted experiments using human cancer tissue.  This time, the experiment showed that the FOXO1 protein was completely absent. This was consistent with the work performed on the St. Jude cell lines.

59.     It was concluded that FOXO1 might be a suppressor of the deadly ARMS cancer and the laboratory decided to publish the results.

60.     However, when Dr. Bois was preparing the article for publication, he did not have access to all of his files and laboratory notebooks.  For this and other reasons, Dr. Bois did not review or recall the results of the February 2003 experiment.

61.     Dr. Bois did not suppress the results of the February 2003 experiment.

62.     Unbeknownst to all involved, however, the December 2003/January 2004 experiments were flawed.  Instead of showing only 25-30% of ARMS in primary tumors without FOXO1 expression, the experiment showed that 100% of the primary tumors were negative,

which was consistent with the results of the experiments done with the St. Jude cell lines used to test and prove the hypothesis.  In other words, the December 2003/January 2004 experiments were 'false negatives.'

63.    Dr. Bois discussed his findings with his colleagues on a regular basis, and nobody ever suggested that he should repeat the experiment.  The manuscript was finally accepted for publication by the JCB and was published in late 2005.

64.    After August 2004, when Dr. Bois left Dr. Grosveld's laboratory, Dr. Bois did not have access to his lab notebooks.  Nevertheless, those lab notebooks, containing all of Dr. Bois's experiments, were available for review and inspection by Dr. Grosveld and the other authors of the JCB Article.

65.    After St. Jude began its investigation, Dr. Grosveld reviewed Dr. Bois's lab notebooks and came across the results of the February 2003 experiment.  Dr. Grosveld brought them to Dr. Rock's attention and the investigation expanded to include the JCB Article.

66.    Once it became apparent that the December 2003 / January 2004 experiments had resulted in false negatives, Dr. Bois openly and promptly admitted the error in the JCB Article and expressed his regret to the St. Jude investigation committee.

67.    The St. Jude investigation committee had to decide whether Dr. Bois's error was the consequence of an honest error or whether he had committed research misconduct.

68.    Dr. Cleveland was asked if he felt that Dr. Bois had committed research misconduct.  Dr. Cleveland testified in part that:

> I think mistakes were made in the Journal of Cell Biology paper for sure that call for a retraction of the manuscript…..I mean, in terms of the manuscripts that are alleged here, in terms of the *MCB* and the JBC papers, no, *I don't think there's anything that indicates that he's done wrong.*  I mean, from what I've been shown in the inquiry report and from reading her response and interpreting that response, *I don't see that there is data that indicates that he committed scientific*

15

*misconduct*.....Yes, I don't think anything ethically was done wrong here; I just don't." (emphasis added).

69.     At about the same time, the other authors of the JCB Article, without consulting Dr. Bois, decided to retract the article.  The retraction occurred in May 2007, less than two years after the article had been published.  The prompt retraction of the JCB Article meant that the error in the JCB Article had little or no impact on the broader scientific community.

### F.     St. Jude's Final Report

70.     On January 31, 2007, the St. Jude investigation committee issued a final report concluding that four (4) of the six (6) allegations of research misconduct against Dr. Bois lacked merit.  However, the St. Jude committee concluded that Dr. Bois had committed misconduct with respect to the MCB Article and the JCB Article.  The St. Jude investigation committee discounted the testimony of Dr. Cleveland and decided that Dr. Bois's defense of honest error was "implausible."

71.     St. Jude's investigation report and its findings of misconduct were flawed.

72.     In addition, the process followed by the St. Jude investigation was unfair to Dr. Bois, who never had a chance to see all of the committee's evidence and never had a chance to cross-examine the witnesses, including the graduate student and Dr. Grosveld, whose testimony had been used to make the findings of research misconduct.

73.     The St. Jude investigation report was sent to ORI which, upon information and belief, opened a file and began conducting an investigation.

### G.     ORI's Review and Proposed HHS Administrative Actions

74.     ORI is authorized to review misconduct proceedings and may make findings and propose HHS administrative actions.  42 C.F.R. § 93.404.

75.     If ORI chooses to commence research misconduct proceedings, it does so by sending the respondent a Charge Letter.  42 C.F.R. § 93.405.

76.     HHS may impose a wide range of administrative actions, ranging from relatively minor actions, such as requiring clarifications or corrections of the research record, to severe penalties, such as suspension or debarment under 45 C.F.R. Part 76.  42 C.F.R. § 93.406.

77.     However, "the purpose of HHS administrative sanctions is remedial."  42 C.F.R. § 93.408.

### H.     The ORI Charge Letter and Dr. Bois's Request for a Hearing

78.      On January 8, 2010, almost two-and-half years after St. Jude began its inquiry, ORI issued a Charge Letter notifying Dr. Bois that it intended to debar him from conducting federally funded research for a period of three years.  A copy of the Charge Letter is attached hereto at Tab A.

79.     In the Charge Letter, ORI asserted that Dr. Bois had committed research misconduct for the same reasons that had been advanced by the St. Jude investigation committee. The ORI Charge Letter attached the St. Jude investigation report as an exhibit.  Specifically, ORI asserted that Dr. Bois had committed research misconduct in connection with the error in Figure 4B in the MCB Article and the publication of erroneous results in the JCB Article.

80.     The Charge Letter also relied heavily on the one-sided evidence presented to the St. Jude investigation committee, and it adopted the St. Jude findings as support for ORI's findings against Dr. Bois.  For instance, on several occasions the Charge Letter specifically cited the opinions of Dr. Grosveld and the St. Jude investigation report as evidence of Dr. Bois's misconduct.  The Charge Letter was also based on the assertions of the graduate student and cited to an "ORI Oversight investigation" but never identified or described that investigation.

17

81.     Both Dr. Grosveld and the graduate student were biased against Dr. Bois.

82.     Without providing any direct evidence, ORI also alleged that Dr. Bois had acted recklessly, knowingly, and/or intentionally.

## I.     **Dr. Bois Files A Timely Hearing Request**

83.     42 C.F.R. § 93.501(b) gives an individual wishing to contest an ORI research misconduct finding the opportunity to request a hearing before an ALJ affiliated with HHS. Under the regulations, Dr. Bois was required to file a hearing request within thirty days.

84.     42 C.F.R. § 93.501 requires that the written hearing request must:

(1)     Admit or deny each finding of research misconduct and each factual assertion made in support of the finding;

(2)     Accept or challenge each proposed HHS administrative action;

(3)     Provide detailed, substantive reasons for each denial or challenge;

(4)     Identify any legal issues or defenses that the respondent intends to raise during the proceeding; and

(5)     Identify any mitigating factors that the respondent intends to prove.

85.     Although the hearing request must deny each finding of research misconduct, the regulations do not require that the hearing request contain all of the evidence that may be relevant to the respondent's defense.  The regulations also do not require the respondent to identify any or all lay or expert witnesses who may be called to testify and does not require the respondent to describe their testimony.  The hearing request is not considered evidence and the respondent does not have to sign the request under the pains and penalties of perjury.  It is sufficient if the respondent identifies disputed issues of material fact.

86.     If a hearing request is submitted, HHS appoints an ALJ who "must grant a respondent's hearing request if the ALJ determines there is a genuine dispute over facts material to the findings of research misconduct or proposed administrative actions."  42 C.F.R. § 93.503.

87.     On February 8, 2010, Dr. Bois filed a 53-page request for a hearing under 42 C.F.R. § 93.500 ("Hearing Request").  A copy of the Hearing Request is attached hereto at Tab B.

88.     Because he no longer had copies of his laboratory notebooks and other materials, Dr. Bois attempted to gain access to those materials in advance of filing his Hearing Request. Although, upon information and belief, those documents were in ORI's possession, ORI declined to give Dr. Bois access to them.  Dr. Bois also attempted to obtain them from St. Jude, which also declined to make those files available.  Thus, Dr. Bois was significantly handicapped in his ability to prepare a hearing request because he did not have access to some of the critical source documents on which the Charge Letter had been prepared.

89.     Accordingly, when he filed his Hearing Request, Dr. Bois also filed a motion requesting that he be allowed to inspect those documents and that he be allowed to supplement his Hearing Request.  A copy of the Motion is attached hereto at Tab C.

90.     In the Hearing Request, Dr. Bois disputed all or part of the allegations in many of the 63 paragraphs in ORI's Charge Letter.

91.     In addition, Dr. Bois identified witnesses who would specifically dispute ORI's allegation of research misconduct.  For example, in the Hearing Request Dr. Bois attached copies of the oral and written statements of Dr. Cleveland who had concluded that, in his opinion, Dr. Bois had not committed misconduct.  He also included the testimony of other witnesses which Dr. Bois contended would be exculpatory.

92.     Dr. Bois also identified other facts, not disputed by ORI, which tended to show that Dr. Bois had committed an honest error and had acted without the level of intent required for a finding of research misconduct.  For example, Dr. Bois demonstrated why it was reasonable for him to believe that his experiments showed that the FOXO1 protein was a suppressor of the ARMS tumor and why his failure to remember or appreciate the February 2003 experiment was an honest error.  He also showed why the mislabeling of Figure 4B in the MCB Article was an honest error and that the graduate student knew, or should have known, that the figure had been mislabeled and could have corrected the error but never spoke up.

93.     In addition, Dr. Bois raised a number of affirmative defenses, including a claim that ORI lacked jurisdiction over the JCB Article because no PHS funds had been used to support the research.

94.     On June 24, 2010, ORI filed a Motion To Dismiss Dr. Bois's Hearing Request.

95.     In addition, ORI also filed a motion to establish that it had jurisdiction over any alleged misconduct by Dr. Bois because it asserted that the research he had performed had received financial support from PHS.

96.     On August 13, 2010, Dr. Bois filed a 132 page opposition to ORI's Motion to Dismiss the Hearing Request.  A copy of the Opposition is attached hereto at Tab D.  The Opposition contained a paragraph-by-paragraph analysis of the Charge Letter, identifying precisely where Dr. Bois had disputed material facts from the Charge Letter and why ORI's motion should be denied.  In addition, Dr. Bois opposed ORI's Motion To Establish Jurisdiction.  A copy of that Opposition is attached hereto at Tab E.

**J.** **The ALJ Dismisses Dr. Bois's Hearing Request**

97.    On May 3, 2011, the ALJ issued a "Recommended Decision Dismissing the Hearing Request" (the "Recommended Decision").  The Recommended Decision is attached hereto at Tab F.

98.    In the Recommended Decision, the ALJ stated: "I therefore *recommend* that his hearing request be dismissed pursuant to 42 C.F.R. § 93.504(a)(2),(3)." (emphasis added)

99.    Shortly after the Recommended Decision was issued, Dr. Bois attempted to clarify the process for obtaining further administrative review, within HHS, of the ALJ's denial of his Hearing Request.  Dr. Bois's counsel communicated with a staff attorney at the Departmental Appeals Board.  That staff attorney contacted the office of the Assistant Secretary for Health to determine the Assistant Secretary's procedure for hearing and appeal.

100.   In a subsequent telephone conversation, an employee within the office of the Assistant Secretary for Health admitted to Dr. Bois's counsel that he was going to contact ORI to seek guidance on how to proceed because he was unfamiliar with the process.

**1.** **The ALJ Issues an Amended Decision Denying Dr. Bois His Right to Seek Further Administrative Review**

101.   On May 16, 2011, without any explanation, the ALJ issued an Amended Decision.  The Amended Decision is attached hereto at Tab G.

102.   The Amended Decision differed from the Recommended Decision in that it added a footnote number seven stating that the Assistant Secretary for Health only reviews ALJ decisions "on the merits of the ORI research misconduct" under 42 C.F.R. § 93.523.  This footnote, which was added after, upon information and belief, the ALJ's office had an ex parte communication with ORI, purported to state that Dr. Bois was not entitled to any further review within HHS.

103.    Upon information and belief, ORI (or its counsel) contacted the ALJ or the ALJ's office after the issuance of the Recommended Decision.  Also, upon information and belief, ORI (or its counsel) had ex parte communications with the ALJ, or with staff in the ALJ's office, and urged the ALJ to issue an amended decision specifying that the ALJ's ruling was a final ruling (rather than a "recommended" ruling) and, more importantly, that no further administrative review was available to Dr. Bois.

104.    Dr. Bois was not a party to any such communications by or with ORI, nor was he made aware of them.

105.    Any such ex parte communication by ORI was improper because it was a substantive communication done without the participation of Dr. Bois or his counsel.   Any such ex parte communication would also call into question whether ORI had other ex parte communications with the ALJ that may have affected the substance of any ruling or action taken by the ALJ.

106.    Dr. Bois was never given an opportunity to contest the issuance of the Amended Decision or the transformation of the ALJ's recommended decision into a final decision, which, for all intents and purposes, sealed Dr. Bois's fate by denying him his only opportunity to defend himself.

### 2.      The ALJ's Decisions Were Arbitrary, Capricious and an Abuse of Discretion

107.    Notwithstanding the procedural errors described above, both the Recommended Decision and the Amended Decision were wrong as a matter of law and must be reversed.

108.    First, in denying Dr. Bois's Hearing Request, the ALJ disregarded clear issues of material fact, such as issues concerning Dr. Bois's state of mind, and whether he had acted "recklessly, knowingly, or intentionally" or whether he had merely committed honest errors.  For

example, the ALJ "found" that, despite Dr. Bois's statements to the contrary, Dr. Bois had

deliberately "suppressed" contrary research results.

109.    Second, the ALJ determined that Dr. Bois had committed misconduct by failing to

repeat the December 2003/January 2004 FOXO1 experiment, even though ORI had never

alleged that such a failure constituted research misconduct.  Moreover, Dr. Bois stated in his

Hearing Request that he had done experiments in 2002 with cell lines that supported and led to

the conclusions in the JCB Article, but the ALJ disregarded the significance of those earlier

experiments because "Dr. Bois provides no detail about (them)."  See Amended Decision

attached at Tab G.  The ALJ also erred by assuming that the failure to report the contrary results

from the February 2003 experiment was research misconduct *per se*.  Specifically, the ALJ

assumed that Dr. Bois's failure to conduct a control experiment, to repeat the experiment, and the

supposed failure to review all of his notes "was certainly reckless."  Id.  These assumptions were

an error of law because they were made without any direct evidence on what constituted reckless

behavior or whether it was a significant deviation from the accepted practices in the relevant

research community.

110.    Third, the ALJ also made numerous improper assessments of the credibility of

witnesses and the weight to be accorded to their testimony.   For example, the ALJ could not

have ruled against Dr. Bois unless there was an implicit acceptance of the credibility of Dr.

Grosveld and the graduate student, whose testimony was biased, never subjected to cross-

examination, and had formed the basis of the St. Jude investigation committee's findings.  The

ALJ also adopted the conclusions of the St. Jude investigation committee that Dr.  Bois's

defenses were "implausible" and that Dr. Cleveland's defense of Dr. Bois was not reliable.

111.    Fourth, the ALJ assumed the significance of facts asserted by ORI without the benefit of testimony that would support such inferences.  For example, ORI alleged in the Charge Letter that Dr. Bois was the "first named author" of both the MCB and JCB Articles. Although it was true that his name appeared first among the list of authors, the Charge Letter never stated whether that listing gave Dr. Bois a special responsibility with respect to the articles. It did not.  However, at various points in the Amended Decision the ALJ makes exactly that assumption, citing sources not relied on by ORI and never giving Dr. Bois the opportunity to present evidence of the significance, if any, of the order of authors in either publication.  See Amended Decision at pp. 9-10, and fn. 4.

112.    Fifth, the ALJ stated that flaws in the St. Jude process were irrelevant.  However, the Amended Decision relied heavily on the St. Jude investigation committee's findings and, in many cases, the ALJ ruled against Dr. Bois for exactly the same reasons cited by the St. Jude investigation committee.

113.    Sixth, the ALJ erred by ignoring disputed issues of material fact that related to ORI's proposed three year debarment and endorsed ORI's sanction "as commensurate with the seriousness of the misconduct" and "relatively lenient," thereby denying Dr. Bois the opportunity to develop a factual record on whether the sanction was appropriate and whether it was disproportionate to other sanctions imposed by HHS.

114.    On May 26, 2011, Deputy Assistant Secretary Gunderson sent a letter advising Dr. Bois that he was debarred from federal contracting activity for a period of three years. Deputy Assistant Secretary Gunderson's letter is attached hereto at Tab H.

115.    On June 3, 2011, defendant Wright sent a letter advising that no further administrative appeals were permitted because the ALJ's decision was not a decision on the merits under 42 C.F.R. § 93.523.  Defendant Wright's letter is attached hereto at Tab I.

116.    On June 6, 2011, Dr. Bois's counsel sent a letter to defendant Wright advising him that ORI lacked authority to implement a debarment order.  Dr. Bois's letter to defendant Wright is attached hereto at Tab J.

117.    On June 9, 2011, defendant Wright sent a letter advising that no further administrative appeals were permitted pursuant to the May 26, 2011 letter of Deputy Assistant Secretary Gunderson because the ALJ's decision was not a decision on the merits under 42 C.F.R. § 93.523.  Defendant Wright's letter is attached hereto at Tab K.

118.    On June 7, 2011, Dr. Bois's counsel sent a letter to defendant Assistant Secretary Koh requesting an opportunity to appeal the Amended Decision.  Dr. Bois's letter to defendant Assistant Secretary Koh is attached hereto at Tab L.

119.    On June 10, 2011, Dr. Bois's counsel sent a letter to defendant Deputy Assistant Secretary Gunderson requesting an opportunity to appeal the Amended Decision.  Dr. Bois's letter to defendant Deputy Assistant Secretary Gunderson is attached hereto at Tab M.

120.    On June 29, 2011, Assistant Secretary Koh's office sent a letter declining to allow an appeal of the ALJ's decision.  The letter from defendant Assistant Secretary Koh's office is attached hereto at Tab N.

121.    Defendant Deputy Assistant Secretary Gunderson never responded to the June 10, 2011 letter of Dr. Bois's counsel.  The refusal to provide Dr. Bois with a further administrative review was an error of law because the ALJ's Amended Decision, though styled as a decision under 42 C.F.R. § 501, was, for all intents and purposes, a decision on the merits under 42 C.F.R.

§ 93.523.  Thus, HHS should have allowed Dr. Bois the opportunity to appeal the Amended

Decision to Assistant Secretary Koh.

122.    On June 9, 2011, HHS issued a final decision, which was published in the Federal

Register.  Simultaneously, ORI issued a press release describing its findings and the final HHS

action.

### Count I:  Violation of the Administrative Procedure Act

123.    Paragraphs 1 through 122 are incorporated as if set forth fully herein.

124.    The decision by HHS to debar Dr. Bois for a period of three years constitutes a

"final decision" within the meaning of the APA, 5 U.S.C. § 704.

125.    In her examination of Dr. Bois's Hearing Request, the ALJ acted arbitrarily,

capriciously, and abused her discretion by, among other things, disregarding facts pertaining to

Dr. Bois's state of mind, repeatedly assuming that Dr. Bois had knowledge of and purposefully

suppressed or failed to disclose his earlier, adverse results, and by imposing a standard for

scientific procedure that was not proved or asserted by ORI, namely the requirement that there be

a repeat of an experiment.

126.    The ALJ additionally disregarded the materiality of disputed facts raised by Dr.

Bois, including, but not limited to, that lack of a control or repetition of an experiment does not

constitute misconduct and that Dr. Bois could not be found to have committed misconduct

simply by virtue of being the first author of the publication in question.

127.    Furthermore, the ALJ did not consider a material fact raised by Dr. Bois and not

disputed by ORI, namely that he had obtained favorable results from using cell lines.

128.    Defendants' actions as described above are:

      a.    arbitrary and capricious;

b.  an abuse of discretion;

c.  not in accordance with law;

d.  a failure to observe proper procedures; and

e.  contrary to Dr. Bois's constitutional rights.

## Count II:  Violation of Fifth Amendment Right to Due Process

129.  Paragraphs 1 through 128 are incorporated as if set forth fully herein.

130.  Defendants denied Dr. Bois the right not to be deprived of liberty or property without due process as guaranteed by the Fifth Amendment to the Constitution of the United States.

131.  Dr. Bois has a protected liberty interest in his reputation and continued employment as a skilled researcher, including but not limited to the ability to receive federal funds.

132.  Defendants did not require clear and convincing evidence in its finding that Dr. Bois engaged in research misconduct and deserved a debarment of three years.

133.  The ALJ denied Dr. Bois the opportunity for a fair hearing when she denied his Hearing Request and issued an Amended Decision denying him the opportunity to seek further administrative review.

134.  Defendants violated Dr. Bois's constitutional rights of due process by denying him a hearing to resolve issues of material fact, for which Dr. Bois was entitled to present evidence and cross-examine witness.

135.    Defendant Gunderson and HHS seriously damaged Dr. Bois's standing and associations in the research community by debarring Dr. Bois from government practice for a period of three years based on an arbitrary and capricious recommendation by the ALJ.

136.    Furthermore, defendants' debarment of Dr. Bois caused him to be terminated from his job at Scripps Research Institute, seriously damaging Dr. Bois's financial wellbeing.

137.    This debarment will also prevent Dr. Bois from taking advantage of other employment opportunities by automatically excluding him from a definite range of employment opportunities with the government without requiring proof by clear and convincing evidence of his violation of the law.

138.    Such actions infringe upon Dr. Bois's protected liberty interest by destroying his ability to pursue his chosen profession, both in the public and private sectors.

139.    Such actions constitute an arbitrary adverse employment action.

140.    Defendants' conduct was done intentionally, with deliberate indifference, or with reckless disregard of Dr. Bois's constitutional rights.

## RELIEF REQUESTED

WHEREFORE, the Plaintiff prays for the following relief:

A.    An immediate injunction staying the debarment of Dr. Bois pending judicial review, including removal of Dr. Bois's name from the General Services Administration "Excluded Parties List System."

B.    An order granting declaratory relief as appropriate;

C.    An order granting preliminary and permanent injunctive relief;

D.    An order reversing the order of disbarment;

E.    All other relief which is just and fair under the law.

28

Respectfully submitted,

For the Plaintiff,
PHILIPPE BOIS, Ph.D.

By its attorneys,


Elizabeth F. Getman, D.C. Bar No. 984738
**SANDLER REIFF YOUNG & LAMB** PC
1025 Vermont Ave, NW
Suite 300
Washington, DC  20005
Tel:  (202) 479-1111
Fax: (202) 479-1115


_/s/_  _Bruce A. Singal_
Bruce Singal  (pro hac vice application pending)
Richard Goldstein (pro hac vice application pending)
**DONOGHUE BARRETT & SINGAL, P.C.**
One Beacon Street
Boston, MA  02108
Tel:  (617) 720-5090
Fax:  (617) 720-5092

Dated: Washington, DC
        August 29, 2011